Robert L. Weigel
Howard S. Hogan
Anne M. Coyle
GIBSON, DUNN & CRUTCHER, LLP
200 Park Avenue
New York, New York 10166
(212) 351-4000

*Attorneys for Plaintiffs Tiffany (NJ) LLC*
*and Tiffany and Company*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------- x

TIFFANY (NJ) LLC and TIFFANY AND COMPANY

                Plaintiffs,

      -against-

BRUCE FORBSE, CHEN JIA WEN, XINYING LAI
a/k/a GIMI WOOTEN, DELING LAI, DANLI LAI
a/k/a DAN LI LAI, , LIN JINWEN, HUANG JIN
SHUN, HU XIN XING, ALEXANDER SAFRONOV,
ALYARICA LTD, TIFFANY JEWELRIES INC.,
TIFFANY-GIFTS INC., SIA UNITED MERCHANTS,
LTD, WEB SALE MERCHANTS LLP, HONG KONG
GREAT HARVEST TRADING CO., LTD., all d/b/a
TIFFANY-COLLECTIONS.COM, TIFFANY-
GIFTS.COM, TIFFANY-JEWELRIES.US,
TIFFANYINSIDESALES.COM, UK-TIFFANY-
GIFTS.COM, BEST10BRANDS.COM,  TRUSTED-
SELLER.EU; AND TRADEONMALL.COM; GSPAY
LIMITED; ABC COMPANIES; and JOHN DOES,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

2011 Civ. 4976 (NRB)

**AMENDED
COMPLAINT**

      Plaintiffs Tiffany (NJ) LLC and Tiffany and Company (collectively, "Plaintiffs" or

"Tiffany"), by their attorneys, Gibson, Dunn & Crutcher, LLP, for their complaint against

Defendants Bruce Forbse, Chen Jia Wen, Xinying Lai a/k/a Gimi Wooten, Deling Lai, Danli Lai

a/k/a Dan Li Lai, Lin Jinwen, Huang Jin Shun, Hu Xin Xing, Alexander Safronov, Alyarica Ltd,

Tiffany Jewelries Inc., Tiffany-Gifts, Inc., SIA United Merchants, Ltd, Web Sale Merchants

LLP, Hong Kong Great Harvest Trading Co., Ltd., all d/b/a Tiffany-Collections.com, Tiffany-

Gifts.com,[1] Tiffany-Jewelries.us, TiffanyInsideSales.com, UK-Tiffany-Gifts.com,

Best10Brands.com, Trusted-Seller.eu, and Tradeonmall.com; GSPAY Limited; ABC

Companies; and John Does (collectively, "Defendants"), allege as follows:

## NATURE OF THE ACTION

1.      Consumers instantly recognize the various federally registered and common law

trademarks used to identify the high quality goods merchandised or manufactured by Tiffany

(collectively, the "Tiffany Marks").  For nearly two centuries, the famous, arbitrary and fanciful

Tiffany Marks have received enormous exposure in the marketplace.  Over the years, millions of

consumers have been exposed to the Tiffany Marks through extensive advertising campaigns, in

mainstream and fashion magazines and other periodicals, as depicted on television and in motion

pictures, on the internet, and in other forms of unsolicited media coverage.  As a result, the

Tiffany Marks are among the most widely-recognized trademarks in the United States and

around the world, as well as among the most popular with consumers, which adds enormous

value to the authentic products that bear the Tiffany Marks (the "Tiffany Products").

2.      Defendants Bruce Forbse, Chen Jia Wen, Xinying Lai a/k/a Gimi Wooten, Deling

Lai, Danli Lai a/k/a Dan Li Lai, Lin Jinwen, Huang Jin Shun, Hu Xin Xing, Alexander Safronov,

Alyarica Ltd, Tiffany Jewelries Inc., Tiffany-Gifts, Inc., SIA United Merchants, Ltd, Web Sale

Merchants LLP, Hong Kong Great Harvest Trading Co., Ltd., all d/b/a Tiffany-Collections.com,

---

[1]    Any word placed in front of Tiffany-Gifts.com, followed by a period, leads to the same
Tiffany-Gifts.com website.  Accordingly, Plaintiffs seek relief against Tiffany-Gifts.com and
any domain name incorporating the prefix "___." to Tiffany-Gifts.com.

Tiffany-Gifts.com, Tiffany-Jewelries.us, TiffanyInsideSales.com, UK-Tiffany-Gifts.com, Best10Brands.com; Trusted-Seller.eu; and Tradeonmall.com; ABC Companies; and John Does (collectively, the "Counterfeiting Defendants"), who have no affiliation with Tiffany, have attempted to capitalize on the popularity of the Tiffany Marks.  Defendants manufacture and market counterfeit versions of Tiffany's Products (the "Counterfeit Products") in an effort to confuse consumers into believing that they are buying authentic versions of the Tiffany Products or to otherwise compete directly with the Tiffany Products.

3.      To ensure that consumers make the association between their Counterfeit Products and the Tiffany Products from which they were copied, the Counterfeiting Defendants not only copy the designs, patterns and color schemes associated with the Tiffany Products, but also expressly identify the Counterfeit Products as "Tiffany" products and make unauthorized use of the trademark TIFFANY name in several of their websites' domain names and throughout each of the websites.

4.      Defendant GSPAY Limited ("GSPAY"), an online payment service provider, played a critical role in the Counterfeiting Defendants' illicit business.  The Counterfeiting Defendants used GSPAY, an online payment service provider, to effectuate the sale of Counterfeit Products through at least three of their infringing websites, Tiffany-Jewelries.us, Tiffany-Gifts.com, and Tiffany-Collections.com.

5.      For its part, GSPAY actively induces infringing conduct by seeking out and providing credit card processing services for internet merchants engaged in "high risk industries," such as selling "replicas," a common euphemism for counterfeits.  GSPAY actively solicits "high risk" and "replica" merchants to use its service, boasting that GSPAY's ability to

3

improve such merchants' businesses by allowing these merchants to accept credit cards as a form of payment for Counterfeit Products.

6.      GSPAY knowingly provides credit card processing services that allow the Counterfeiting Defendants to sell Counterfeit Products through their websites, thus providing the necessary marketplace for such transactions, all while profiting and participating in such counterfeiting activities.  Indeed, GSPAY charges merchants a monthly percentage fee based on the type of business and its monthly volume.   GSPAY also collects both a "per transaction fee" (ranging from $0.50 - $1.00 for each sale) as well as a "processing fee" for each individual transaction.  In other words, the more Counterfeit Products the Counterfeiting Defendants sold, the more money GSPAY would collect in fees.

7.      As GSPAY states in the "Terms and Conditions" of its merchant services agreement, GSPAY "act[s] as an intermediary between the Merchant's Internet web site and the banking network."  GSPAY states that its services include assisting the merchant's potential customers "to make purchases of Merchandise or Services, providing information concerning the status of your fulfillment of Orders, and assisting Customers regarding refunds, returns and billing questions."  Further, as a term of the merchant agreement, GSPAY requires that the merchant's "[c]ustomers must place orders themselves through the GSPAY Site."  Through these activities, GSPAY has supported the manufacturing, marketing and sale of products specifically designed to confuse consumers into believing that they are buying authentic Tiffany Products or to otherwise compete directly with the Tiffany Products.

8.      Many, if not most, consumers will not purchase Counterfeit Products over the Internet if they are unable to use credit cards or debit cards to effect the purchase.  Alternative means of payment, such as cash, checks, money orders, and bank wire transfers, are not as

4

convenient for many consumers, and they involve greater risk that the transaction will not be completed.  As a result, counterfeiters are functionally dependent on the businesses, like GSPAY, that provide them with the ability to accept credit card-based purchases.

9.      Upon information and belief, GSPAY, with actual and/or constructive knowledge of the Counterfeiting Defendants' illegal conduct, continues to process transactions for "high risk" merchants engaged in the sale of Counterfeit Products.

10.      The Counterfeiting Defendants have manufactured and sold their Counterfeit Products without Tiffany's permission, authorization, or approval, and Defendant GSPAY provided the Counterfeiting Defendants with the credit card processing services necessary to consummate their infringing sales of Counterfeit Products.  Defendants' conduct is likely to cause, and has caused, consumers mistakenly to believe that the Counterfeit Products sold and promoted by the Counterfeiting Defendants (with indispensable assistance from GSPAY) either are authentic Tiffany Products, produced by the Counterfeiting Defendants under a license agreement, joint venture or other form of authorization by Tiffany, or are otherwise endorsed by or affiliated with Tiffany, either at the point of sale, by the recipient of a gift, or when consumers and potential consumers see the Counterfeit Products in use.

11.      For these and other reasons, Defendants have caused, and unless enjoined, will continue to cause, irreparable harm to Tiffany and an incalculable loss of goodwill and damages.

**PARTIES**

12.      Tiffany (NJ) LLC is a limited liability company organized in Delaware with its principal place of business at 15 Sylvan Way, Parsippany, New Jersey 07054.  Tiffany (NJ) LLC is the proprietor of the trademarks at issue in this action.

13.     Tiffany and Company is a New York corporation with its principal place of business at 727 Fifth Avenue, New York, New York 10022.  Tiffany and Company, doing business as Tiffany & Co., is the exclusive licensee and user of the trademarks at issue in this action.

14.     Upon information and belief, Defendant Bruce Forbse has a business address of Kimonos, 43A, P.C., Limassol, NA, 3095, Cyprus, a telephone number of 1.8665996470, and e-mail address of sime.jane.brunton@gmail.com.  Upon information and belief, Defendant Bruce Forbse, also has a home and/or business address of Suite 81, 77 Beak Street, London W1F 9DB, Great Britain, and a telephone number of 1.8665996470.  Upon information and belief, Bruce Forbse is doing business as Tiffany-Collections.com, Tiffany-Gifts.com, Tiffany-Jewelries.us, TiffanyInsideSales.com, UK-Tiffany-Gifts.com, Best10Brands.com, Trusted-Seller.eu, Alyarica Ltd, Tiffany Jewelries Inc., Tiffany-Gifts Inc., United Merchants, Ltd, Web Sale Merchants LLP, and Tradeonmall.com.

15.     Upon information and belief, Defendant Chen Jia Wen has a home and/or business address in FoShan City, China.  Upon information and belief, Chen Jia Wen is doing business as Tiffany-Collections.com, Tiffany-Gifts.com, Tiffany-Jewelries.us, TiffanyInsideSales.com, UK-Tiffany-Gifts.com, Best10Brands.com, Trusted-Seller.eu, Alyarica Ltd, Tiffany Jewelries Inc., Tiffany-Gifts Inc., United Merchants, Ltd, Web Sale Merchants LLP, and Tradeonmall.com.

16.     Upon information and belief, Defendant Xinying Lai a/k/a Gimi Wooten a/k/a Xin Ying Lai a/k/a Lai Xinying has a home and/or business address of Room 801, Building 37, No. 52 Huide Road, Guangzhou, Guangdong Province, China, 510000, and e-mail addresses of gimi.wooten@googlemail.com, laixinying1982@gmail.com, and laiyulian2008@gmail.com.

Upon information and belief, Xinying Lai a/k/a Gimi Wooten a/k/a Xin Ying Lai a/k/a Lai Xinying is doing business as Tiffany-Collections.com, Tiffany-Gifts.com, Tiffany-Jewelries.us, TiffanyInsideSales.com, UK-Tiffany-Gifts.com, Best10Brands.com, Trusted-Seller.eu, Alyarica Ltd, Tiffany Jewelries Inc., Tiffany-Gifts Inc., United Merchants, Ltd, Web Sale Merchants LLP, and Tradeonmall.com.

17.     Upon information and belief, Defendant Danli Lai a/k/a Dan Li Lai is a citizen of the People's Republic of China with a last known address of 98 Olive Street, Temple City, California.  Upon information and belief, Danli Lai is doing business as Tiffany-Collections.com, Tiffany-Gifts.com, Tiffany-Jewelries.us, TiffanyInsideSales.com, UK-Tiffany-Gifts.com, Best10Brands.com, Trusted-Seller.eu, Alyarica Ltd, Tiffany Jewelries Inc., Tiffany-Gifts Inc., United Merchants, Ltd, Web Sale Merchants LLP, and Tradeonmall.com.

18.     Upon information and belief, Defendant Deling Lai is a citizen of the People's Republic of China with a last known address of 8537 E. Broadway, Apartment 148, San Gabriel, California 91776-2040.  Upon information and belief, Deling Lai is doing business as Tiffany-Collections.com, Tiffany-Gifts.com, Tiffany-Jewelries.us, TiffanyInsideSales.com, UK-Tiffany-Gifts.com, Best10Brands.com, Trusted-Seller.eu, Alyarica Ltd, Tiffany Jewelries Inc., Tiffany-Gifts Inc., United Merchants, Ltd, Web Sale Merchants LLP, and Tradeonmall.com.

19.     Upon information and belief, Defendant Alexander Safronov is a citizen of the Russian Federation.  Upon information and belief, Alexander Safronov is doing business as Tiffany-Collections.com, Tiffany-Gifts.com, Tiffany-Jewelries.us, TiffanyInsideSales.com, UK-Tiffany-Gifts.com, Best10Brands.com, Trusted-Seller.eu, Alyarica Ltd, Tiffany Jewelries Inc., Tiffany-Gifts Inc., United Merchants, Ltd, Web Sale Merchants LLP, and Tradeonmall.com.

20.      Upon information and belief, Defendant Hu Xin Xing is a resident of China doing business as Tiffany-Collections.com, Tiffany-Gifts.com, Tiffany-Jewelries.us, TiffanyInsideSales.com, UK-Tiffany-Gifts.com, Best10Brands.com, Trusted-Seller.eu, Alyarica Ltd, Tiffany Jewelries Inc., Tiffany-Gifts Inc., United Merchants, Ltd, Web Sale Merchants LLP, and Tradeonmall.com.

21.      Upon information and belief, Defendant Lin Jinwen is a citizen of the People's Republic of China.  Lin Jinwen is the registered owner of the merchant bank account at the Bank of China, in the name of Tradeonmall.com, a "dummy" website that was used to process sales from the website Tiffanyoutletstore.com, which was operated by Defendant Xinying Lai in violation of the preliminary injunction entered by the court and sold the Counterfeit Products. Upon information and belief, Lin Jinwen is doing business as Tiffany-Collections.com, Tiffany-Gifts.com, Tiffany-Jewelries.us, TiffanyInsideSales.com, UK-Tiffany-Gifts.com, Best10Brands.com, Trusted-Seller.eu, Alyarica Ltd, Tiffany Jewelries Inc., Tiffany-Gifts Inc., United Merchants, Ltd, Web Sale Merchants LLP, and Tradeonmall.com.

22.      Upon information and belief, Defendant Huang Jin Shun is a citizen of the People's Republic of China.  Upon information and belief, Huang Jin Shun has directly benefitted financially from the manufacture, distribution, sale and advertisement of Counterfeit Products by receiving and accepting deposits from credit card transactions made through the website Tradeonmall.com, a "dummy" website used to allow the infringing website Tiffanyoutletstore.com to access credit card processing systems at the Bank of China.  Upon information and belief, Huang Jin Shun is doing business as Tiffany-Collections.com, Tiffany-Gifts.com, Tiffany-Jewelries.us, TiffanyInsideSales.com, UK-Tiffany-Gifts.com,

Best10Brands.com, Trusted-Seller.eu, Alyarica Ltd, Tiffany Jewelries Inc., Tiffany-Gifts Inc.,

United Merchants, Ltd, Web Sale Merchants LLP, and Tradeonmall.com.

23.     Upon information and belief, Defendant Tiffany Jewelries Inc. has a business

address in Zurich, Switzerland, a telephone number of 63458882634, and e-mail address of

tiffany-jewelries@aol.com.  Upon information and belief, Tiffany Jewelries Inc. is doing

business as Tiffany-Collections.com, Tiffany-Gifts.com, Tiffany-Jewelries.us,

TiffanyInsideSales.com, UK-Tiffany-Gifts.com, Best10Brands.com, Trusted-Seller.eu, Alyarica

Ltd, Tiffany-Gifts Inc., United Merchants, Ltd, Web Sale Merchants LLP, and Tradeonmall.com.

24.     Upon information and belief, Tiffany-Gifts Inc. has a business address of Sankt

Annae Plads 122-221, Copenhagen, Copenhagen dk K1150, a telephone number of

458.833.8210, and e-mail address of tiffany-gifts@icq.com.  Upon information and belief,

Tiffany-Gifts Inc. is doing business as Tiffany-Collections.com, Tiffany-Gifts.com, Tiffany-

Jewelries.us, TiffanyInsideSales.com, UK-Tiffany-Gifts.com, Best10Brands.com, Trusted-

Seller.eu, Alyarica Ltd, Tiffany Jewelries Inc., United Merchants, Ltd, Web Sale Merchants

LLP, ant Tradeonmall.com.

25.     Upon information and belief, Alyarica Ltd has a business address of Kimonos,

43A, P.C., Limassol, NA, 3095, Cyprus, a telephone number of 1.888.318.0062, and e-mail

address of support@alyarica.com.  Upon information and belief, Alyarica Ltd is also doing

business as Tiffany-Collections.com, Tiffany-Gifts.com, Tiffany-Jewelries.us,

TiffanyInsideSales.com, UK-Tiffany-Gifts.com, Best10Brands.com, Trusted-Seller.eu, Tiffany

Jewelries Inc., Tiffany-Gifts Inc., United Merchants, Ltd, Web Sale Merchants LLP, and

Tradeonmall.com.

26.     Upon information and belief, United Merchants LTD has a business address of Ventspils, Celtnieku iela 3-81, Latvia.  Upon information and belief, United Merchants LTD is also doing business as Tiffany-Collections.com, Tiffany-Gifts.com, Tiffany-Jewelries.us, TiffanyInsideSales.com, UK-Tiffany-Gifts.com, Best10Brands.com, Trusted-Seller.eu, Alyarica Ltd, Tiffany Jewelries Inc., Tiffany-Gifts Inc., Web Sale Merchants LLP, and Tradeonmall.com.

27.     Upon information and belief, Web Sale Merchants LLP has a business address of Suite 81, 77 Beak Street, London W1F 9DB, UK London, UK W1F 9DB, GB, a telephone number of 1.866.599.6470, and e-mail address of sime.jane.brunton@gmail.com.  Upon information and belief, Web Sale Merchants LLP is doing business as Tiffany-Collections.com, Tiffany-Gifts.com, Tiffany-Jewelries.us, TiffanyInsideSales.com, UK-Tiffany-Gifts.com, Best10Brands.com, Trusted-Seller.eu, Alyarica Ltd, Tiffany Jewelries Inc., Tiffany-Gifts Inc., United Merchants, Ltd., and Tradeonmall.com.

28.     Upon information and belief, Defendant Hong Kong Great Harvest Trading Co., Limited has business addresses of Flat F 23/F Block 2 242 Choi Hung Road, Rhythm Garden San Po Kong Kowloog, Hong Kong, and Room 205, Huayi Shoe Town, Baiyun District, Guangzhou, Guangdong Province, China, 510000.  Upon information and belief, Hong Kong Great Harvest Trading Co., Limited is owned and operated by Defendant Xinying Lai a/k/aGimi Wooten a/k/a Xin Ying Lai a/k/a Lai Xinying  and is doing business as Tiffany-Collections.com, Tiffany-Gifts.com, Tiffany-Jewelries.us, TiffanyInsideSales.com, UK-Tiffany-Gifts.com, Best10Brands.com, Trusted-Seller.eu, Alyarica Ltd, Tiffany Jewelries Inc., Tiffany-Gifts Inc., United Merchants, Ltd, Web Sale Merchants LLP, and Tradeonmall.com.

29.     Defendant GSPAY is a third-party online payment processing company organized under the laws of England and Wales.  GSPAY has a business address of 122-126 Tooley Street, London SE1 2TU, United Kingdom and an email address of info@gspay.com.

30.     Upon information and belief, ABC Companies are companies engaged in the manufacture, distribution, sale and advertisement of Counterfeit Products, but whose identity and number are not presently known.

31.     Upon information and belief, John Does are individuals who are consciously engaged in directing, controlling, ratifying, or otherwise participating in the manufacture, distribution, sale, and advertisement of Counterfeit Products, or who consciously and directly benefit financially from the manufacture, distribution, sale, and advertisement of Counterfeit Products, but whose identity and numbers are presently unknown.

32.     Upon information and belief, the Counterfeiting Defendants are the moving and conscious force behind the operation of the fully interactive, commercial websites available at the Uniform Resource Locators ("URLs") www.Tiffany-Jewelries.us, www.Tiffany-Gifts.com, www.Tiffany-Collections.com, www.TiffanyInsideSales.com, www.UK-Tiffany-Gifts.com, www.Best10Brands.com, and www.Trusted-Seller.eu.

## JURISDICTION AND VENUE

33.     This is an action arising under the Trademark Act of 1946, 15 U.S.C. § 1051, *et seq.* (the "Lanham Act") and under the laws of the State of New York.

34.     This Court has jurisdiction under 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331, 1338(a) and 1338(b).  This Court has supplemental jurisdiction over all other claims asserted herein under 28 U.S.C. § 1367(a).

35.     Personal jurisdiction is proper over all Defendants pursuant to New York

C.P.L.R. § 302(a) because the unlawful conduct complained of herein has caused, and continues

to cause, tortious injury to Plaintiffs within this District, including damages to the business of

Tiffany & Co., a New York corporation with its principal place of business at 727 Fifth Avenue,

New York, New York 10022.  Among other things, upon information and belief, the Defendants'

infringing conduct has resulted in the actual or potential confusion of consumers within the State

of New York and this District, all to the detriment of Tiffany's reputation and goodwill.

36.     Upon information and belief, all Defendants regularly conduct, solicit or transact

business in this District, all Defendants have solicited consumers in this District, all Defendants

have entered into agreements with consumers and businesses within this District, and all

Defendants derive substantial revenue in interstate and/or international commerce.

37.     Upon information and belief, the Counterfeiting Defendants have offered to sell

Counterfeit Products to consumers within this District, and have shipped the Counterfeit

Products into the State of New York.  Additionally, the Counterfeiting Defendants regularly and

systematically directed electronic activity into the State of New York through their fully

interactive websites www.Tiffany-Jewelries.us, www.Tiffany-Gifts.com, www.Tiffany-

Collections.com, www.TiffanyInsideSales.com, www.UK-Tiffany-Gifts.com,

Best10Brands.com, Trusted-Seller.eu, and Tradeonmall.com with the manifest intent of engaging

in business within this District.

38.     Upon information and belief, Defendant GSPAY has acted to effectuate the

Counterfeiting Defendants' sales to consumers located within New York State and this District,

has induced the sale of Counterfeit Products within New York State and this District, and has

provided services essential to the sale of Counterfeit Products within New York State and this District.

39.     Upon information and belief, GSPAY also transacts business in New York State and within this District by providing credit card processing services to Internet merchants located within New York State and actively soliciting such business.  For example, GSPAY offers merchant account services to New York State residents through its fully interactive website, www.gspay.com, with the manifest intent of engaging in business in New York.  GSPAY's website invites merchants to submit an online application for a merchant account and includes "New York" in a drop-down list of states within a section requesting the merchant's contact information.  GSPAY states that, once the merchant submits an application, GSPAY "will contact you within the next 24 business hours to review the best possible merchant fit for your business."   Additionally, GSPAY's website offers potential and current merchants the option to "speak with a sales representative by ICQ," an instant messaging program that allows parties to communicate by text in real-time.

40.     The Defendants further transact business in New York by way of their relationship with MasterCard, which has its principal place of business at 2000 Purchase Street, Purchase, New York 10577.

41.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to these claims arose in this District.

**TIFFANY'S BUSINESS AND MARKS**

42.     Tiffany Products are enormously popular with the general public.  For over 170 years, Tiffany has achieved great renown as a purveyor of luxury goods, including items such as

jewelry, watches, sterling silver goods (other than jewelry), personal accessories, fragrances, stationery and home items.

43.     Tiffany (NJ) LLC is the owner of the right, title and interest in and to, *inter alia*, the following trademarks, for which Tiffany and Company, doing business as Tiffany & Co., is the exclusive licensee:

| Mark | Reg./Serial No. | Date of Registration |
|---|---|---|
| T & CO | 1,699,365 | 12/24/1991 |
|  | 0,023,573 | 7/29/1893 |
| TIFFANY & CO. | 1,228,189 | 2/22/1983 |
| | 1,283,306 | 6/26/1984 |
| | 1,968, 614 | 4/16/1996 |
| TIFFANY | 0,133,063 | 7/6/1920 |
| | 2,639,539 | 10/22/2002 |
| TIFFANY | 1, 228, 409 | 2/22/1983 |
| TIFFANY BLUE  | 2,359,351 | 6/20/2000 |
| TIFFANY BLUE BOX  | 2,184,128 | 8/25/1998 |

| TIFFANY BLUE SHOPPING BAG<br> | 2,416,795 | 1/2/2001 |
|---|---|---|

44.     Annexed hereto as Exhibit 1 are true and correct copies of the United States

Patent and Trademark Office ("PTO") registration certificates evidencing Tiffany's ownership

of these trademarks and printouts from the PTO's website setting forth the status of the Tiffany

Marks.  All of the registrations set forth in Exhibit 1 are valid, subsisting, unrevoked, and

uncancelled.  Additionally, all of these trademarks are incontestable.  Tiffany also owns

common law rights in the above and other trademarks for use in connection with the Tiffany

Products.

45.     The Tiffany Marks are in full force and effect.  Tiffany has never abandoned the

Tiffany Marks, nor has Tiffany ever abandoned the goodwill of its businesses in connection with

the Tiffany Marks.  Tiffany intends to continue to preserve and maintain its rights with respect to

the Tiffany Marks.

46.     The Tiffany Marks are among the most widely-recognized trademarks in the

world.  Tiffany has spent hundreds of millions of dollars to extensively advertise and promote its

brand, the Tiffany Products and the Tiffany Marks throughout the world, with advertising

campaigns that include full-page advertisements in widely-distributed fashion and news

publications, and Tiffany has enjoyed billions of dollars in sales.  In the past decade alone,

Tiffany's sales of goods bearing, or marketed under, the TIFFANY trademark name in the

United States have exceeded $12.6 billion in retail.  During that same period, Tiffany has spent

in excess of $750 million in advertising and promoting its products in the United States,

including the State of New York.

47.     Consumers are exposed to Tiffany and the Tiffany Marks not only through

advertisements, but in newspapers, television programs, motion pictures and virtually all

instrumentalities of popular culture.  As a result, the Tiffany Marks have become famous and

highly valuable trademarks, possessing strong secondary meaning among consumers.

48.     The Tiffany Marks are uniquely valuable among consumer trademarks because

they receive a consistent level of exposure to consumers, far beyond what most jewelry

manufacturers or licensors can achieve to promote their products.  As a result, the Tiffany Marks

have come to symbolize the enormous goodwill of Tiffany's business through the United States

and the world.  No other manufacturer lawfully uses the Tiffany Marks or any other substantially

similar marks for similar types of goods.

49.     Consumers, potential consumers, and other members of the public and industry

associate the Tiffany Products with exceptional materials, gems, style and workmanship.  On

information and belief, many consumers purchase Tiffany Products because of Tiffany's

reputation for quality and the goodwill associated with the Tiffany Marks.  Tiffany's reputation

is a direct result of its extensive advertising and promotion, and concomitant widespread sales,

the skill and care utilized in the manufacture of Tiffany Products, the uniform high quality of

such products sold under, or in connection with, the Tiffany Marks, and the public acceptance

thereof.

50.     To maintain the quality and integrity associated with the Tiffany Products,

Tiffany controls and limits the distribution of goods authorized to bear the Tiffany Marks.  All

merchandise marketed under the TIFFANY name is inspected by Tiffany quality control personnel before being released directly through channels of trade that have been approved by Tiffany, including sales on the internet through Tiffany's official website, Tiffany catalogues, and Tiffany's retail stores.  Tiffany does not use liquidators, does not sell overstock merchandise and does not run "sales" on Tiffany Products.  Tiffany's tightly controlled distribution network, along with its careful selection of materials, assures adherence to the highest quality standards for the manufacture and dissemination of Tiffany Products.

51.    Tiffany has created invaluable goodwill throughout the United States and elsewhere by selling products of dependable quality.  Based on the extensive sales of Tiffany Products and their wide popularity, the Tiffany Marks have developed a secondary meaning and significance in the minds of the purchasing public, and the purchasing public immediately identifies the services and products utilizing and/or bearing such trademarks with Tiffany.

## THE COUNTERFEIT PRODUCTS

52.    Defendants, without authorization or license from Tiffany, have willfully and intentionally used, reproduced and/or copied the Tiffany Marks in connection with their manufacturing, distributing, exporting, importing, advertising, marketing, selling and/or offering to sell their Counterfeit Products.  Defendants have shipped at least certain of the Counterfeit Products into the State of New York.

53.    Defendants' websites claim that all of their merchandise are "100% guaranteed authentic."  However, the products offered for sale by Defendants are not authentic Tiffany Products.  Tiffany did not manufacture, inspect, or package the Counterfeit Products, and did not approve the Counterfeit Products for sale and/or distribution.  Tiffany has examined samples of the Counterfeit Products and determined them to be counterfeit.

54.     For example, shown below on the left is an image of an authentic Tiffany 1837™ cuff in sterling silver.  The authentic Tiffany Product displayed below bears Tiffany's federally registered T & CO. trademark.  *See* Ex. 1. (U.S. Reg. No. 1,699,365).  Shown on the right is an image of a Counterfeit Product, a replica offered for sale by Defendants through the Tiffany-Jewelries.us website and described by Defendants as an "1837 cuff."  The Counterfeit Product has ornamentation, design and labeling that are intended to appear like the ornamentation, design and labeling on the authentic product.  The Counterfeit Product bears an exact copy of Tiffany's federally registered T & CO. trademark.  *See id.*

 

**AUTHENTIC**            **DEFENDANTS' REPLICA**

55.     Similarly, shown below on the left is an image of an authentic Return to Tiffany™ heart tag toggle bracelet in sterling silver.  The authentic product displayed below bears Tiffany's federally registered TIFFANY & CO. trademark.  *See* Ex. 1 (U.S. Reg. No. 1,228,189; 1,283,306; 1,968,614).  On the right is an image of a Counterfeit Product, a replica offered for sale by Defendants through their website Tiffany-Gifts.com and described as a "Heart tag charm Toggle bracelet."  The Counterfeit Product has ornamentation, design and labeling that are intended to appear like the ornamentation, design and labeling on the authentic product.  Moreover, the Counterfeit Product bears an exact copy of Tiffany's federally registered TIFFANY & CO. trademark on the toggle clasp and on the heart tag.  *See id.*

 

**AUTHENTIC**          **DEFENDANTS' REPLICA**

56.     Further, shown on the left below is an image of an authentic Tiffany 1837™ Lock Pendant in sterling silver.  The authentic product displayed below bears Tiffany's federally registered T & CO. trademark.  *See* Ex. 1. (U.S. Reg. No. 1,699,365).  On the right is an image of a Counterfeit Product, a replica offered for sale by Defendants through their website Tiffany-Collections.com and described by Defendants as an "1837 Lock pendant."  The Counterfeit Product has ornamentation, design and labeling that are intended to appear like the ornamentation, design and labeling on the authentic product.  In fact, the Defendants' photograph of the Counterfeit Product appears to be a copy of the photograph of the authentic Tiffany Product from the Tiffany website.  Moreover, the Counterfeit Product bears an exact copy of Tiffany's federally registered T & CO. trademark.  *See id.*



**AUTHENTIC          DEFENDANTS' REPLICA**

57.     All of Defendants' Counterfeit Products follow this pattern—each copies the ornamentation, design and labeling of an authentic Tiffany Product and most bear exact copies of one or more of the Tiffany Marks.

58.     Even though Defendants' Counterfeit Products are of inferior quality, they appear superficially similar, and in some cases superficially identical, to genuine Tiffany Products.  The design of the Counterfeit Products and the display of the Tiffany Marks on and in connection with the Counterfeit Products communicates to consumers—and may confuse consumers into believing—that the Counterfeit Products were manufactured, licensed, approved or sponsored by, or otherwise affiliated with, Tiffany.

59.     Defendants have offered these Counterfeit Products for sale without permission, authority or license from Tiffany and, upon information and belief, such actions were taken in bad faith, with full knowledge of Tiffany's ownership of and/or exclusive rights to use and license the Tiffany Marks.  At all relevant times and in furtherance of their infringing activities, Defendants have willfully and intentionally used and continue to use the Tiffany Marks on their Counterfeit Products.

60.     The result of Defendants' manufacturing, advertisement, distribution, and sale of Counterfeit Products will be to deceive and mislead consumers into believing that Defendants' products or activities are authorized or sponsored by Tiffany or to cause mistakes or to deceive either at the point of sale or when consumers, or potential consumers, see the Counterfeit Products in use.

61.     For example, Defendants attempt to visually mimic the design of the Tiffany website, by using similar font in the "Tiffany Jewelry" heading, a similar layout, and a background color similar to Tiffany Blue.  Set forth below are true and accurate screenshots comparing the layout of the Tiffany website with the layout of the Defendants' websites.

**TIFFANY WEBSITE**



**DEFENDANTS' WEBSITE:  TIFFANY-JEWELRIES.US**



**DEFENDANTS' WEBSITE:  TIFFANY-COLLECTIONS.COM**



**DEFENDANTS' WEBSITE:  TIFFANY-GIFTS.COM**



**DEFENDANTS' WEBSITE:  UK-TIFFANY-GIFTS.COM**



**TIFFANY WEBSITE**



**DEFENDANTS' WEBSITE:  TIFFANYINSIDESALES.COM**



62.    Furthermore, Defendants make liberal use of the Tiffany Marks on their websites to make an explicit connection between their Counterfeit Products and genuine Tiffany Products. For example, set forth below is a true and accurate screenshot from Tiffany-Jewelries.us, in which Defendants describe some of their products as "Tiffany" jewelry.



63.    Along with the "deal price," Defendants also advertise an inaccurate "retail price" for the Counterfeit Products—suggesting that Tiffany Products sell at those retail prices, and further, that Tiffany Products may be discounted below that price—thus devaluing the quality, worth, and goodwill of Tiffany Products.

64.    Tiffany examined an item sold by Defendants to Tiffany's investigator through Defendants' website, www.Tiffany-Jewelries.us.  This item was described by Defendants as

"TFA09 Heart tag key ring," and inscribed with the "Tiffany & Co." trademark.  Tiffany's

inspection revealed not only that the items purchased from Defendants were counterfeit, but also

that the items were not "sterling silver," as Defendants' website, www.Tiffany-Jewelries.us,

claimed.  Tiffany's laboratory analysis showed that each of the items consisted primarily of a

white metal composed of no more than 5.12% silver.  By contrast, authentic sterling silver

Tiffany Products are made of 92.5% silver.

65.     Consumers have purchased items from Tiffany-Jewelries.us, Tiffany-Gifts.com,

Tiffany-Collections.com, TiffanyInsideSales.com, and UK-Tiffany-Gifts.com that Defendants

misleadingly described as "sterling silver" "Tiffany" products.  On information and belief, an

unknowable number of these consumers believed these items to be sterling silver, as advertised

by Defendants.  Those individuals who received the Counterfeit Products as gifts may have

believed them to be authentic Tiffany Products and incorrectly associated the inferior quality

with Tiffany or its products.

66.     Defendants offer hundreds of "Tiffany" Counterfeit Products directly to

consumers through their websites, Tiffany-Jewelries.us, Tiffany-Gifts.com, Tiffany-

Collections.com, TiffanyInsideSales.com, and UK-Tiffany-Gifts.com.

67.     On information and belief, Defendants have infringed at least 8 Tiffany Marks by

selling, offering to sell and/or distributing at least 10 different types of goods bearing

counterfeits of the Tiffany Marks, including, but not limited to:  (1) bracelets; (2) necklaces;

(3) earrings; (4) rings; (5) watches; (6) charms; (7) key rings; (8) money clips; (9) cuff links; and

(10) jewelry sets.

68.     In addition to their unlawful sale of Counterfeit Products, Defendants have also

infringed upon the Tiffany Marks by making use of the TIFFANY trademark in the domain

name of their websites www.Tiffany-Jewelries.us, www.Tiffany-Gifts.com, www.Tiffany-Collections.com, www.TiffanyInsideSales.com, and www.UK-Tiffany-Gifts.com.  Defendants' unauthorized use of the TIFFANY trademark in connection with the sale of Counterfeit Products purposefully designed to replicate genuine Tiffany Products and/or bearing exact copies of the Tiffany Marks further contributes to the likelihood that consumers and potential consumers will be misled into believing that Defendants' websites and Counterfeit Products are somehow authorized or sponsored by Tiffany.

69.    On information and belief, Defendants have made use of the services of at least the following banks, savings and loan associations, credit card companies, credit card processing agencies, or other financial institutions or agencies that engage in the transfer of real property in order to carry out, facilitate, complete, or ratify the unlawful transactions complained of herein, or used such entities to hold, transfer, transmit, relay, maintain, or invest profits from the unlawful activities described herein:  MasterCard and Visa.

70.    On information and belief, Defendants have made use of the services of at least the following website hosts, domain registrars, domain name owners, internet service providers, and internet protocol supporters to carry out, facilitate, complete, or ratify the unlawful transactions complained of herein:  (1) GoDaddy.com; (2) Web Commerce Communications Limited; (3) Directi Internet Solutions Pvt. Ltd; and (4) Internet.bs.Corp.

71.    The purchase made by Tiffany's investigator from Defendants' website www.Tiffany-Jewelries.us was processed by United Merchants LTD/www.trusted-seller.eu.  The Trusted-Seller.eu website does not contain any information suggesting that Trusted Seller functions as a third party payment platform or provides e-commerce services to merchants.

Rather, the site offers for sale headphones, electric hair irons and DVDs.  The site states: "Please Pay Your Attention that We Sell Replica Goods."

72.      The attempted purchase from Defendants' website www.Tiffany-Gifts.com was processed through Web Sale Merchants LLP/www.Best10Brands.com.   The Best10Brands.com website does not contain any information suggesting that Best10Brands.com functions as a third party payment platform or provides e-commerce services to merchants.  Rather, the site offers for sale electric hair irons, "Chloe" handbags, and "Ed Hardy" clothing.

73.      On information and belief, Defendants' websites www.Tiffany-Jewelries.us, www.Tiffany-Gifts.com, www.Tiffany-Collections.com, www.TiffanyInsideSales.com, and www.UK-Tiffany-Gifts.com use the websites Trusted-Seller.eu and www.Best10Brands.com to process credit card transactions for the sale of Counterfeit Products in order to hide the illicit nature of their business from credit card companies who would otherwise refuse to allow access to the credit card networks.

74.      Defendants' website www.tiffanyoutletstore.com used the website Tradeonmall.com to process credit card transactions for the sale of Counterfeit Products in violation of the preliminary injunction entered by the court and to hide the illicit nature of their business from credit card companies who would other refuse to allow access to the credit card networks.

### DEFENDANT GSPAY KNOWINGLY PROCESSED SALES OF COUNTERFEIT PRODUCTS

75.      Defendant GSPAY is in the business of providing credit card processing services to online merchants selling "high risk" and "replica" products.  Defendant GSPAY actively solicits "high risk" merchants, including merchants selling "replica" products, a common euphemism for counterfeits.   Defendant GSPAY actively assesses the prospective merchant's

business to provide credit card processing services.  On its website, available at URL

http://www.gspay.com/, Defendant http://www.gspay.com/ explains "[w]e believe that the key to

providing the best solution for your eCommerce merchant business is to put ourselves in your

shoes. We study and research your business thoroughly to fully understand your needs, based on

your business type, location, financial status, etc., before providing you with the best credit card

processing solution online.

76.     Defendant GSPAY encourages merchants to use offshore merchants accounts

because "[t]he offshore banks do not really care about your type of business or products. This is

unlike the US banks that may at times go much farther than simple due diligence or looking at

potential client banks."

77.      By processing transactions for the sale of counterfeit goods, Defendant GSPAY

not only supplies the necessary marketplace for such transactions, but is a full partner in these

counterfeiting activities, and certainly profits by processing credit card transactions for

counterfeiters.

78.     Defendant GSPAY provides e-commerce payment processing services for the

Counterfeiting Defendants, enabling the Counterfeiting Defendants to accept credit card payment

for the Counterfeit Products sold through their websites.   The ability to process payments by

credit or debit card is essential to the sale of goods online.  As explained on Defendant GSPAY's

website, "[w]e provide you with an offshore merchant account and web based payment gateway

software, enabling you to sell goods and services online, in multiple currencies, securely, via

Mastercard and Visa."  Defendant GSPAY's services facilitated the counterfeiters' ability to

quickly and efficiently transact sales for Counterfeit Products through their websites by

providing customers with the convenience of using personal credit cards to pay for the unlawful

products.

      79.    Defendant GSPAY actively solicits "replica" merchants.  As set forth on the

GSPAY website:

> The importance of credit card processing for ecommerce marketing is evident. Web merchants, which have failed to open Internet merchant accounts for online credit card processing are not able to withstand the tough competition of the modern ecommerce market, as online shopper rarely make purchases with web stores that do not accept plastic cards.

> Online replica business is classified as high-risk and thus requires high-risk credit card processing, which has been created to meet the needs of high-risk businesses. High-risk merchant accounts help web businesses avoid difficulties while dealing with payment processing issues. This type of Internet merchant accounts provide credit card processing services for all high-risk business located all over the world.

> If you own an Internet replica store, setting replica merchant account is a must. Replica merchant account will offer you reliable and secure credit card processing, as well as a number of other benefits. To get the most of your replica merchant account, it is crucial signing up with the right payment services provider.

> By opening online merchant account for your web replica business, you will avail various payment processing solutions that will help you increase the potential of your business and expand it worldwide. Once you set up replica merchant account, you will make online marketing easier and smoother. Your merchant account will help manage high volume of sales and will provide sufficient scam level control.

> You will also get an opportunity to accept various currencies and this, in turn, will help open new horizons for your web replica business. Multi-currency processing combined with ability to process all kinds of major debit and credit cards, will make your business available to a greater number of customers.

> High-risk replica merchant account will easily come up with your business needs and will make online business management easier. High-risk merchant accounts are easy to set up and do not require special knowledge. Your credit card processor will provide secure environment for all money transactions, as well as will take care of all payments and provide detailed reports on completed transactions.

> While banks refuse to provide web replica businesses with high-risk merchant accounts, due to potential risks and fraud involved, online merchant solutions providers are eager to provide you with all payment solutions needed for the successful and profitable online marketing.

Opening high-risk replica merchant account is the best decision you can make for the development of your business.

80.    Defendant GSPAY facilitated the financing and commercial operations of the Counterfeiting Defendants by providing them with credit card processing services in connection with their operation of the websites Tiffany-Jewelries.us, Tiffany-Gifts.com, and Tiffany-Collections.com.

81.    Defendant GSPAY was an indispensible participant in the sale of Counterfeit Products for the Counterfeiting Defendants' websites.  As disclosed by the credit card processor SIA Complete Payment Systems, sales from the websites Tiffany-Jewelries.us, Tiffany-Gifts.com, and Tiffany-Collections.com were effectuated through payment processing terminals Best10Brands.com and Trusted-Seller.eu, which were connected to the credit card processor SIA Complete Payment Systems by GSPAY.  GSPAY provided SIA Complete Payment Systems with a transaction log reflecting sales from each of the websites Tiffany-Jewelries.us, Tiffany-Gifts.com, and Tiffany-Collections.com, which were registered to GSPAY's system.

82.    Defendant GSPAY plays an integral role in the sales of counterfeit goods by the Defendants and other counterfeiters.  Defendant GSPAY is literally in the middle of each and every online sale of a counterfeit good made by the merchants who use its services.

83.    The Counterfeiting Defendants' websites Tiffany-Jewelries.us, Tiffany-Gifts.com, and Tiffany-Collections.com featured literally hundreds of products bearing unauthorized copies of the Tiffany Marks.  Thus a mere cursory review of the Counterfeiting Defendants' websites would make it clear that these websites offered for sale counterfeit "Tiffany" jewelry.

84.     Defendant GSPAY knowingly facilitated the Counterfeiting Defendants' sale of Counterfeit Products and/or was willfully blind to the Counterfeiting Defendants' unlawful activities.

## FIRST CAUSE OF ACTION

### Against the Counterfeiting Defendants

(Trademark Infringement Under Section 32
of the Lanham Act, 15 U.S.C. § 1114(1)(a))

85.     Tiffany repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

86.     The Tiffany Marks and the goodwill of the businesses associated with them in the United States and throughout the world are of great and significant value, are highly distinctive and arbitrary, and have become universally associated in the public mind with products and services of the very highest quality and reputation.

87.     Defendants' actions described above have caused and are likely to cause confusion and mistake and deceive potential customers and the general purchasing public as to the source, origin, or sponsorship of their Counterfeit Products, and are likely to deceive the public into believing that the Counterfeit Products sold by Defendants originate from, are associated with, or are otherwise authorized by Tiffany, all to the damage and detriment of Tiffany's reputation, goodwill and sales.

88.     Defendants' unauthorized use of the Tiffany Marks constitutes trademark infringement of Tiffany's federally-registered trademarks, the full extent of which is presently unknown but is substantial.  This has caused damage to Tiffany and the substantial business and goodwill symbolized by the Tiffany Marks in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

89.     Defendants' actions described above, including the unauthorized use of the Tiffany Marks in interstate commerce, have caused, and unless restrained, will continue to cause, great and irreparable injury to Tiffany, to the Tiffany Marks, and to the business and goodwill represented thereby, leaving Tiffany with no adequate remedy at law.

## SECOND CAUSE OF ACTION

### Against the Counterfeiting Defendants

(Trademark Counterfeiting Under Sections 32, 34 and 35,
of the Lanham Act, 15 U.S.C. §§ 1114(1)(b), 1116(d), & 1117(b)-(c))

90.     Tiffany repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

91.     Without Tiffany's authorization or consent, and having knowledge of Tiffany's well-known and prior rights in the Tiffany Marks, Defendants have distributed, advertised, offered for sale and/or sold their Counterfeit Products to the consuming public in direct competition with Tiffany, in or affecting interstate commerce.

92.     Defendants' Counterfeit Products reproduce, counterfeit, copy, and colorably imitate the Tiffany Marks or display spurious designations that are identical with, or substantially indistinguishable from, the Tiffany Marks.  Defendants have applied their reproductions, counterfeits, copies, and colorable imitations to labels and advertisements intended to be used in commerce upon or in connection with the sale, distribution, or advertising of Defendants' Counterfeit Products, which is likely to cause confusion, or to cause mistake, or to deceive.

93.     Defendants' unauthorized use of the Tiffany Marks on or in connection with the Counterfeit Products was done with notice and full knowledge that such use was not authorized or licensed by Tiffany.  Defendants' actions constitute willful counterfeiting of the Tiffany Marks in violation of 15 U.S.C. §§ 1114, 1116(d), and 1117(b)-(c).

94.     As a direct and proximate result of Defendants' conduct, Tiffany has suffered

damage to its valuable trademarks and other damages in an amount to be proved at trial.

95.     Tiffany does not have an adequate remedy at law, and will continue to be

damaged by Defendants' sale of Counterfeit Products unless this Court enjoins Defendants from

such fraudulent business practices.

### THIRD CAUSE OF ACTION

#### Against the Counterfeiting Defendants

(False Designation of Origin Under Section 43(a)
of the Lanham Act, 15 U.S.C. § 1125(a))

96.     Tiffany repeats and realleges each and every allegation in the foregoing

paragraphs as if fully set forth herein.

97.     As a result of Tiffany's experience, care, and service in producing and providing

genuine Tiffany Products, these products have become widely known and have acquired a

worldwide reputation for excellence.  Moreover, the Tiffany Marks have become associated with

Tiffany Products, and have come to symbolize the reputation for quality and excellence

associated with Tiffany and authentic products produced by it.  As such, the Tiffany Marks have

attained secondary meaning. The Tiffany Marks are also inherently distinctive.

98.     Defendants' use of the Tiffany Marks on or in connection with the Counterfeit

Products, as alleged above, is likely to confuse, mislead, or deceive customers, purchasers, and

members of the general public as to the origin, source, sponsorship, or affiliation of the

Counterfeit Products, and is likely to cause such people to believe in error that the Counterfeit

Products have been authorized, sponsored, approved, endorsed, or licensed by Tiffany, or that

Defendants are in some way affiliated with Tiffany.

99.     Defendants' actions, including but not limited to their unauthorized use in commerce of the Tiffany Marks, constitute false designation of origin, false and misleading descriptions of fact, and false and misleading representations of fact, which have caused, and are likely to cause, confusion, mistake and deception, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

100.     Defendants' actions as described above, including their unauthorized, false, and misleading use in commerce of the Tiffany Marks on Counterfeit Products and other uses of Plaintiffs' Marks in interstate commerce, have caused, and unless restrained, will continue to cause, great and irreparable injury to Tiffany, and to the business and goodwill represented by the Tiffany Marks in an amount that cannot presently be ascertained, leaving Tiffany with no adequate remedy at law.

## FOURTH CAUSE OF ACTION

### Against the Counterfeiting Defendants

(Trademark Dilution Under the Federal Trademark
Dilution Act, 15 U.S.C. § 1125(c))

101.     Tiffany repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

102.     The Tiffany Marks are famous within the meaning of the Trademark Dilution Revision Act of 2006.  Among other things:  (1) the Tiffany Marks have a high degree of inherent distinctiveness; (2) the Tiffany Marks have been used continuously for decades throughout the United States to promote many goods and services; (3) Tiffany and its authorized licensees have advertised and publicized the Tiffany Marks continuously for decades throughout the United States; (4) Tiffany has used its trademarks in a trading area of broad geographical scope encompassing all of the states and territories of the United States; (5) the Tiffany Marks

36

are among the preeminent marks in the luxury goods market; (6) the Tiffany Marks have an extremely high degree of recognition among consumers; (7) there are no trademarks similar to the Tiffany Marks; and (8) many of the Tiffany Marks are the subject of valid and subsisting registrations under the Lanham Act on the Principal Register.

103.    Because Tiffany Products have gained a reputation for superior quality and excellence, the Tiffany Marks have gained substantial renown and reputation.

104.    Defendants' use of the Tiffany Marks is likely to cause blurring to and of the Tiffany Marks and impair their distinctiveness.  Consumers are likely to associate Defendants' uses of the Tiffany Marks with the Tiffany Marks themselves because of the similarity between Defendants' use of the Tiffany Marks and the Tiffany Marks themselves.  In particular, the following factors make dilution by blurring likely:  (1) Defendants are making use of the Tiffany Marks themselves; (2) the Tiffany Marks have acquired tremendous distinctiveness through Tiffany's continuous promotion and uses of the Tiffany Marks; (3) the Tiffany Marks have become famous and achieved a high level of recognition among the consuming public; (4) Tiffany's commercial use of the Tiffany Marks is substantially exclusive to Tiffany and its agents and licensees; (5) on information and belief, Defendants intend to create an association between Defendants' uses of the Tiffany Marks and the Tiffany Marks themselves; and (6) on information and belief, many consumers actually find Defendants' uses of the Tiffany Marks confusingly similar to, and therefore associate them with, the Tiffany Marks themselves.

105.    Defendants' conduct as alleged above is also likely to cause tarnishment among the Tiffany Marks that harms the reputation of the Tiffany Marks because of the similarity between Defendants' uses of the Tiffany Marks and the Tiffany Marks themselves.  In particular, the Counterfeit Products sold, offered for sale, and/or distributed by Defendants display the

Tiffany Marks in a manner that is confusingly similar to Tiffany Products and therefore mislead consumers into believing that Tiffany Products are of low quality.

106.    Defendants' conduct described above dilutes, blurs, tarnishes, and whittles away the distinctiveness of the Tiffany Marks, and has caused actual dilution and has detracted from the distinctiveness of the famous Tiffany Marks with consequent damage to Tiffany, and to the substantial business and goodwill symbolized by the Tiffany Marks, in violation of the Federal Trademark Dilution Act, 15 U.S.C. § 1125(c).

107.    Defendants' acts of trademark dilution have caused and, unless restrained, will continue to cause, great and irreparable injury to Tiffany, to the Tiffany Marks, and to the substantial business and goodwill represented thereby, in an amount that cannot be presently ascertained, leaving Tiffany with no adequate remedy at law.

108.    Defendants' conduct has been undertaken with a willful intent to trade on the reputation of Tiffany and to cause dilution of the famous Tiffany Marks, and this conduct entitles Tiffany to an accounting and disgorgement of Defendants' illicit profits, damages and the other remedies available pursuant to 15 U.S.C. § 1125(c)(2).

## FIFTH CAUSE OF ACTION

(Trademark Infringement Under New York Law)

109.    Tiffany repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

110.    Defendants' acts as described above constitute trademark infringement under New York common and/or statutory law.  N.Y. Gen. Bus. Law §§ 360-k, 360-o.

## SIXTH CAUSE OF ACTION

**Against the Counterfeiting Defendants**

(Trademark Dilution Under New York Law)

111.    Tiffany repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

112.    Defendants' acts as described above dilute and detract from the distinctiveness of the famous Tiffany Marks, resulting in damage to Tiffany and the substantial business and goodwill symbolized by the Tiffany Marks in violation of New York's Anti-Dilution Statute, N.Y. Gen. Bus. Law § 360-l.

## SEVENTH CAUSE OF ACTION

**Against the Counterfeiting Defendants**

(Unfair Competition Under New York Law)

113.    Tiffany repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

114.    Defendants' acts as described above constitute unfair competition under New York State common law, as preserved by N.Y. Gen. Bus. Law § 360-o.

## EIGHTH CAUSE OF ACTION

**Against the Counterfeiting Defendants**

(Deceptive Acts and Practices Under New York Statutory Law)

115.    Tiffany repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

116.    Defendants' acts as described above constitute deceptive acts and practices and false advertising in violation of N.Y. Gen. Bus. Law §§ 349-350.

## NINTH CAUSE OF ACTION

### Against the Counterfeiting Defendants

(Trademark Cyberpiracy)

117.    Tiffany repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

118.    Defendants registered and used the domain names www.Tiffany-Jewelries.us, www.Tiffany-Gifts.com, www.Tiffany-Collections.com, www.TiffanyInsideSales.com, and www.UK-Tiffany-Gifts.com with bad faith intent to profit from the use of the trademark TIFFANY name, which was both famous and distinctive at the time that the Defendants' domain names were registered.

119.    Defendants' registration and use of domain names incorporating the trademark TIFFANY name are likely to cause consumers mistakenly to believe that Defendants' websites are approved of, sponsored by, or otherwise affiliated with Tiffany.  Defendants' registration and use of domain names incorporating the trademark TIFFANY name are likely to detract from the distinctiveness of that famous mark.  By engaging in the activities described above, Defendants are engaging in cyberpiracy in connection with services distributed in interstate commerce in violation of Section 43(d) of the Lanham Act, 15 U.S.C. § 1125(d).

120.    Defendants' acts of cyberpiracy have caused and are causing great and irreparable injury to Plaintiffs and the trademark TIFFANY name, and the business and goodwill represented thereby, in an amount that cannot be ascertained at this time and, unless restrained, will cause further irreparable injury, leaving Plaintiffs no adequate remedy at law.

121.    By reason of the foregoing, Plaintiffs are entitled to injunctive relief against Defendants, restraining further acts of cyberpiracy, and the damages provided for in 15 U.S.C. § 1117(d).

## TENTH CAUSE OF ACTION

### Against Defendant GSPAY

(Contributory Trademark Infringement and Counterfeiting Under the Lanham Act)

122.    Tiffany repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

123.    The Tiffany Marks are valid, federally registered trademarks entitled to protection under the Lanham Act.

124.    The Tiffany Marks and the goodwill of the business associated with them in the United States and throughout the world are of great and significant value, are highly distinctive and arbitrary, and have become universally associated in the public mind with products and services of the highest quality and reputation.

125.    With full knowledge of Tiffany's rights in the Tiffany Marks, GSPAY provided credit card processing services to, and generated business and income from, internet merchants, including, but not limited to, the operators of Tiffany-Jewelries.us, Tiffany-Gifts.com, and Tiffany-Collections.com., who sell Counterfeit Products bearing the Tiffany Marks.

126.    Defendant GSPAY, by offering credit card processing services to "high risk" internet merchants of "replica" products, such as the Counterfeiting Defendants, induced, aided, facilitated, participated in and/or materially contributed to the sale of Counterfeit Products and infringement of the Tiffany Marks in violation of the Lanham Act, 15 U.S.C. §§ 1114, 1116(d), 1117(b)-(c), and 1125(a).  Among other acts, Defendant GSPAY participated in the sale of Counterfeit Products by accepting the credit card numbers for the sales transactions of Counterfeit Products, processing the transactions, and paying the proceeds from the sales of Counterfeit Products to counterfeiters such as Defendants.

41

127.    By providing critical credit card processing services to internet merchants of Counterfeit Products, such as the Counterfeiting Defendants, Defendant GSPAY supplied the necessary marketplace for the sale of Counterfeit Products, from which the Counterfeiting Defendants received financial benefit.

128.    Defendant GSPAY exercised control over the means of infringement and counterfeiting described above.  Defendant GSPAY explicitly solicited and accepted business from "replica" merchants like Defendants, and provided them with the necessary services to make selling Counterfeit Products over the internet profitable and lucrative.

129.    The actions of Defendant GSPAY as described above have caused and are likely to cause confusion and mistake and to deceive potential customers and the general purchasing public as to the source, origin, or sponsorship of the Counterfeit Products, and are likely to deceive the public into believing that the Counterfeit Products sold by the websites receiving payment processing services from Defendant GSPAY originate from, are associated with, or are otherwise authorized by Tiffany, all to the damage and detriment of Tiffany's reputation, goodwill and sales and the notoriety of the Tiffany name.

130.    Defendant GSPAY is therefore contributorily liable for the infringement and counterfeit use of the Tiffany Marks by the Counterfeiting Defendants and other internet merchants who rely on Defendant GSPAY's credit card processing services in connection with the sale of Counterfeit Products.

131.    Plaintiffs have been damaged by Defendant GSPAY's contributory infringement in an amount to be determined at trial.   For example, and without limitation, Defendant GSPAY has been unjustly enriched through the unlawful and unauthorized sales of Counterfeit Products,

which Defendant GSPAY processed and from which Defendant GSPAY has received income and/or transaction fees.

132.    Plaintiffs have been, and absent injunctive relief will continue to be, irreparably harmed by the actions of Defendant GSPAY.

118.    Plaintiffs have no adequate remedy at law for the foregoing wrongful conduct.

WHEREFORE, Plaintiffs respectfully request that this Court:

1.    Immediately and permanently enjoin Defendants, their officers, directors, agents, representatives, successors or assigns, and all persons acting in concert or in participation with any of them from:

(a)    manufacturing, distributing, delivering, shipping, importing, exporting, advertising, marketing, promoting, selling or otherwise offering for sale Counterfeit Products or any other products produced by Tiffany or confusingly similar to Tiffany Products, or that otherwise bear, contain, display, or utilize any of the Tiffany Marks, any derivation or colorable imitation thereof, or any mark confusingly similar thereto or likely to dilute or detract from the Tiffany Marks;

(b)    moving, returning, or otherwise disposing of, in any manner, any Counterfeit Products or any other products confusingly similar to Tiffany Products, or that otherwise bear, contain, display, or utilize any of the Tiffany Marks, any derivation or colorable imitation thereof, or any mark confusingly similar thereto or likely to dilute or detract from the Tiffany Marks;

(c)        making or employing any other commercial use of the Tiffany Marks, any derivation or colorable imitation thereof, or any mark confusingly similar thereto or likely to dilute or detract from the Tiffany Marks;

(d)        using any other false designation of origin or false description or representation or any other thing calculated or likely to cause confusion or mistake in the mind of the trade or public or to deceive the trade or public into believing that Defendants' products or activities are in any way sponsored, licensed or authorized by or affiliated or connected with Tiffany; and

(e)        doing any other acts or things calculated or likely to cause confusion or mistake in the mind of the public or to lead purchasers or consumers or investors into the belief that the products or services promoted, offered, or sponsored by Defendants come from Tiffany or its licensees, or are somehow licensed, sponsored, endorsed, or authorized by, or otherwise affiliated or connected with Tiffany;

(f)        further diluting and infringing all Tiffany Marks and damaging Tiffany's goodwill;

(g)        using or transferring ownership of the domain names www.Tiffany-Jewelries.us, www.Tiffany-Gifts.com and additional websites with domain names _____.Tiffany-Gifts.com, www.Tiffany-Collections.com, www.TiffanyInsideSales.com, www.UK-Tiffany-Gifts.com, www.Trusted-Seller.eu, and www.Best10Brands.com, or

registering, using or transferring any other domain name or website making unauthorized use of any of the Tiffany Marks;

(h)      otherwise competing unfairly with Tiffany or any of its authorized licensees in any manner;

(i)      transferring, disposing of, or secreting any money, stocks, bonds, real or personal property, or other assets of Defendants or otherwise paying or transferring any money, stocks, bonds, real or personal property, or other assets to any of the Defendants, or into or out of any accounts associated with or utilized by any of the Defendants, as set forth further herein;

(j)      secreting, destroying, altering, removing, or otherwise dealing with the unauthorized products or any books or records which contain any information relating to the importing, manufacturing, producing, distributing, circulating, selling, marketing, offering for sale, advertising, promoting, renting, or displaying of all unauthorized products which infringe the Tiffany Marks; and

(k)      assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in the above subparagraphs (a) through (j), or effecting any assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in subparagraphs (a) through (j).

2.      Direct Defendants to account to Tiffany for their profits and order that Tiffany recover Defendants' illicit profits and damages arising out of the acts of deception and infringement described above, and a sum equal to three times such profits or damages (whichever is greater), pursuant to 15 U.S.C. § 1117(a) and (b);

3.      Award Tiffany statutory damages of $160 million representing $2 million per counterfeit mark per type of goods or services sold, offered for sale, or distributed, pursuant to 15 U.S.C. § 1117(c);

4.      Award Tiffany statutory damages of $500,000 for Defendants' willful cyberpiracy pursuant to 15 U.S.C. 1117 § (d);

5.      Award Tiffany punitive damages pursuant to New York State common law (as preserved by N.Y. Gen. Bus. Law § 360-o) on account of Defendants' gross, wanton, willful, and malicious conduct;

6.      Direct Defendants to recall and remove from all stores, shops, markets, outlets, catalogues, websites, or other channels of commerce any Counterfeit Products or any other products confusingly similar to Tiffany Products, or that otherwise bear, contain, display, or utilize any of the Tiffany Marks, any derivation or colorable imitation thereof, or any mark confusingly similar thereto or likely to dilute or detract from the Tiffany Marks, that are in Defendants' possession or control and all means of making the same;

7.      Direct Defendants to deliver up for destruction all Counterfeit Products or any other products confusingly similar to Tiffany Products, or that otherwise bear, contain, display or utilize any of the Tiffany Marks, any derivation or colorable imitation thereof, or any mark confusingly similar thereto or likely to dilute or detract from the Tiffany Marks, that are in

Defendants' possession or control and all means of making the same, in accordance with 15 U.S.C. § 1118;

8.      Direct Defendants to deliver up for destruction any and all guarantees, circulars, price lists, labels, signs, prints, packages, wrappers, pouches, receptacles, advertising matter, promotional, and other materials in the possession or control of Defendants bearing any of the Tiffany Marks, any derivation or colorable imitation thereof, or any mark confusingly similar thereto or likely to dilute or detract from the Tiffany Marks, in accordance with 15 U.S.C. § 1118;

9.      Direct Defendant GSPAY, to cease providing payment processing services to all replica merchants who sell Counterfeit Products or any other products confusingly similar to Tiffany Products, or that otherwise bear, contain, display or utilize any of the Tiffany Marks, any derivation or colorable imitation thereof, or any mark confusingly similar thereto or likely to dilute or detract from the Tiffany Marks, and supply Tiffany with a complete record of such transactions, and to close all accounts held by counterfeiters, and freeze all payments currently being processed, and transfer all funds in their possession which are associated with or attributed to the Counterfeit Products to Tiffany;

10.      Direct Defendants to supply Tiffany with a complete list of entities from whom they purchased and to whom they distributed and/or sold Counterfeit Products or any other products confusingly similar to Tiffany Products, or that otherwise bear, contain, display or utilize any of the Tiffany Marks, any derivation or colorable imitation thereof, or any mark confusingly similar thereto or likely to dilute or detract from the Tiffany Marks, and to provide

the manner through which the Counterfeit Products or other products were paid, including any

bank accounts to, through, or from which funds were wired;

11.     Direct Defendants to file with the Court and serve on counsel for Tiffany within

thirty (30) days after entry of any injunction issued by the Court in this action, a sworn written

statement pursuant to 15 U.S.C. § 1116(a) setting forth in detail the manner and form in which

Defendants have complied with any injunction which the Court may enter in this action;

12.     Award Tiffany reasonable attorneys' fees along with the costs and disbursements

incurred herein as a result of Defendants' intentional and willful infringement, pursuant to 15

U.S.C. § 1117 and N.Y. Gen. Bus. Law § 349(h);

13.     Order that Defendants are prohibited from registering any other domain names

incorporating, in whole or in part, any word or mark identical or similar to the name TIFFANY

or otherwise making use of the Tiffany Marks;

14.     Order that Defendants transfer registration of the following domain names to

Tiffany:  www.Tiffany-Jewelries.us, www.Tiffany-Gifts.com, www.Tiffany-Collections.com,

www.TiffanyInsideSales.com, and www.UK-Tiffany-Gifts.com.

15.     Order that Defendants' assets  be restrained and frozen pending the outcome of

this action so that Tiffany's right to an accounting and disgorgement of the Defendants' illicit

profits and damages set forth in this Complaint is not later rendered meaningless; and

16.     Award Tiffany such other and further relief as the Court deems just and proper.


Dated: New York, New York
November 24, 2014

                                        GIBSON, DUNN & CRUTCHER LLP

48

By: ___/s/ Robert L. Weigel____
       Robert L. Weigel
       Howard S. Hogan
       Anne M. Coyle

200 Park Avenue, 49th Floor
New York, New York 10166-0193
Telephone: 212.351.4000
Facsimile: 212.351.4035

*Attorneys for Plaintiffs Tiffany (NJ) LLC
and Tiffany and Company*